[Cite as *State v. Miller*, 2024-Ohio-5326.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 113764 |
| v. | : | |
| CLARK MILLER, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 7, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-659025-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, *for appellee.*

Allison F. Hibbard, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Clark Miller ("Miller"), appeals from the trial court's judgment sentencing him to a term of imprisonment for violating the terms of his community-control sanctions. Miller raises the following assignments of error for review:

1. The trial court erred in imposing a consecutive prison sentence.

2. The trial court violated defendant's due process rights.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} On August 26, 2021, Miller was named in a seven-count indictment, charging him with two counts of drug trafficking in violation of R.C. 2925.03(A)(2), with forfeiture specifications (Counts 1 and 3); four counts of drug possession in violation of R.C. 2925.11(A), with forfeiture specifications (Counts 2, 4, 5, and 6); and a single count of possession of criminal tools in violation of R.C. 2923.24(A), with forfeiture specifications (Count 7).

{¶ 4} On March 1, 2022, Miller appeared before the trial court and expressed his willingness to accept the terms of a negotiated plea agreement with the State. Following a Crim.R. 11 colloquy, Miller pleaded guilty to drug trafficking, with forfeiture specifications, as charged in Count 1 of the indictment; and two counts of drug possession, with forfeiture specifications, as charged in Counts 4 and 5 of the indictment. The remaining counts were nolled.

{¶ 5} On March 31, 2022, the trial court issued a sentencing journal entry, sentencing Miller to a two-year term of community-control sanctions. Miller was ordered to be screened for placement into the McDonnell Center Community Based Correctional Facility ("CBCF"). If deemed eligible, Miller was required to successfully complete the CBCF program and follow all program- and community-

plan recommendations. Upon successful completion of the CBCF program, Miller was required to:

> 1.) Report to probation officer according to risk level guidelines or as directed by P.O.
>
> 2.) Defendant to be supervised by: CBCF Unit.
>
> 3.) Attend programming as indicated in case plan.
>
> 4.) Defendant is ordered to pay a monthly supervision fee of $20.
>
> 5.) Random drug testing.
>
> 6). Conditions and terms of probation are subject to modification by the probation officer with approval of the court.

{¶ 6} During the sentencing hearing, the court orally advised Miller that if he violated the terms of his community-control sanctions, he was "looking at an 18-month sentence in each felony four, plus a 12-month sentence on the felony five. So that's 48 months." (Tr. 47.) The court's advisement was included in the sentencing journal entry, which reiterated that a violation of community-control sanctions could "result in more restrictive sanctions, or a prison term of 48 months as approved by law."

{¶ 7} On May 11, 2022, it was determined that Miller was not eligible for placement at CBCF due to certain medical needs. He was therefore released to supervised probation.

{¶ 8} On July 12, 2023, Miller was found to be in violation of his community-control sanctions after testing positive for drugs and alcohol. Upon hearing from the parties, the trial court continued Miller's sanctions. The modified conditions of

Miller's community-control sanctions required him "to enter and successfully complete an inpatient treatment program, and follow all aftercare recommendations." Miller was advised that he would be arrested on "first positive/dilute, or failure to submit a drug screen." Miller was remanded, to await a bed for an inpatient treatment program.

{¶ 9} On July 17, 2023, Miller appeared before a substituting trial judge based on allegations that Miller passed a substance to a fellow inmate who overdosed on fentanyl just minutes later. The inmate was revived and taken to the hospital for medical treatment. At the violation hearing, Detective Scott Vargo ("Det. Vargo") of the Cuyahoga County Sheriff's Department testified that the alleged hand-to-hand transaction was captured by the jail's security-camera system. Afte reviewing the jail video, Det. Vargo completed a body scan of Miller and "the people operating the body scanner believed there was an object in his rectum." (Tr. 69.) Det. Vargo obtained a search warrant to complete a body cavity search but could not get the hospital to execute the warrant. Approximately three or four hours after the object was first observed on the body scanner, an x-ray of Miller's body was taken at the hospital. No object was observable in Miller's rectum at that time. During a subsequent interview with the inmate, Det. Vargo confirmed that the inmate received the drugs from Miller. (Tr. 68.)

{¶ 10} Based on the testimony adduced at the violation hearing, the court found Miller to be in violation of his community-control sanctions. Miller's community-control sanctions were terminated, and he was sentenced to 18 months

in prison on Counts 1 and 4, and 12 months in prison on Count 5.  The prison terms were ordered to run consecutively for an aggregate prison term of 48 months.

{¶ 11} Miller now appeals from his sentence.

## II.  Law and Analysis

## A.  Consecutive Sentences

{¶ 12} In the first assignment of error, Miller argues the trial court erred by imposing consecutive terms of imprisonment "where [he] was not properly notified of the consequences of violating community control and there was no suspended prison sentence imposed."

{¶ 13} The proper scope of felony-sentence review by Ohio appellate courts is set forth in R.C. 2953.08(G)(2).  Pursuant to R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1.

> Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 14} It is axiomatic that a court may "impose sentences only as provided by statute." *State v. Williams*, 2016-Ohio-7658, ¶ 22, citing *State v. Fischer*, 2010-Ohio-6238, ¶ 21-22.  This tenet "'reflects a fundamental understanding of

constitutional democracy' that the power to define criminal offenses and prescribe punishment is vested in the legislative branch of government[.]" *Id.*, quoting *Fischer* at ¶ 21-22. *See also State v. Hitchcock*, 2019-Ohio-3246, ¶ 18 ("[I]n Ohio, judges have no inherent power to create sentences, and the only sentence that a trial judge may impose is that provided for by statute.").

{¶ 15} Initially, Miller argues he "was not formally sentenced to community control sanctions at his March 31, 2022, sentencing hearing" because the court stated on the record during the sentencing hearing that he was required to undergo an evaluation with CBCF before the court was willing to find that he was amenable to community control. Thus, Miller contends that the court had no authority to find him in violation of community control when the original sentence was not properly imposed.

{¶ 16} Under the doctrine of res judicata,

> a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175, 180 (1967).

{¶ 17} This court has previously recognized that an appeal from a community-control-revocation hearing "is not a direct appeal from a defendant's original conviction" and, therefore, "res judicata precludes appellate review in such an appeal of issues that could have been raised in a direct appeal." *State v. Turner*,

2018-Ohio-2730, ¶ 6 (8th Dist.), citing *State v. Bailey*, 2016-Ohio-494, ¶ 7 (8th Dist.).  Other Ohio appellate courts have reached the same conclusion. *See, e.g., State v. Boone,* 2023-Ohio-2017, ¶ 15 (9th Dist.); *State v. Allbaugh*, 2013-Ohio-2031, ¶ 14 (4th Dist.); *State v. Turner*, 2017-Ohio-4101, ¶ 8 (2d Dist.); *State v. Fields*, 2012-Ohio-4808, ¶ 16-19 (5th Dist.).

{¶ 18} In this case, Miller did not appeal from the sentencing journal entry issued on March 31, 2022.  Accordingly, he cannot collaterally attack the validity of his original sentence in an appeal from the judgment imposing sentence on violations of his community-control sanctions.  *See State v. Hamilton*, 2024-Ohio-4504, ¶ 10 (2d Dist.); *State v. Cooper*, 2019-Ohio-3919, ¶ 22 (2d Dist.) ("Res judicata bars [defendant] from raising an issue on appeal from the revocation of his community control sanctions which could have and should have been raised on direct appeal from the judgment of conviction in which community control was first imposed.").  We therefore find his argument is untimely and barred by the doctrine of res judicata.

{¶ 19} Alternatively, Miller argues the trial court "did not thoroughly nor adequately inform [him] of the consequences of violating probation."  Specifically, Miller claims the trial court failed to comply with R.C. 2929.19(B)(4) because the court "did not properly notify [him] of the possibility of consecutive sentences should he violate his community control."  We find no merit to Miller's interpretation of the record.

{¶ 20} R.C. 2929.19(B)(4) governs the imposition of community-control sanctions. The current version of R.C. 2929.19(B)(4), effective September 30, 2021, reads as follows:

> If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, . . . the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the range from which the prison term may be imposed as a sanction for the violation, which shall be the range of prison terms for the offense that is specified pursuant to section 2929.14 of the Revised Code and as described in section 2929.15 of the Revised Code.

*Id.*

{¶ 21} In *State v. Brooks*, 2004-Ohio-4746, the Ohio Supreme Court addressed a trial court's obligations under R.C. 2929.19(B)(4), stating:[1]

> [P]ursuant to R.C. 2929.19(B)([4]) and 2929.15(B), a trial court sentencing an offender to a community control sanction must, at the time of the sentencing, notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation.

*Id.* at ¶ 29. In addition to notifying the offender at the time of sentencing, such "'[n]otification must also be contained in the accompanying sentencing journal entry.'" *State v. Goforth*, 2008-Ohio-5596, ¶ 20 (8th Dist.), quoting *State v. McWilliams*, 2005-Ohio-2148 (9th Dist.). "Compliance with R.C. 2929.19(B)(4) is a prerequisite to imposing a prison term for a community control violation." *State*

---

[1] The *Brooks* Court interpreted former analogous R.C. 2929.19(B)(5).

*v. Clinton*, 2022-Ohio-717, ¶ 14 (2d Dist.). "When a sentence fails to include a mandatory provision, such as the notification provision under R.C. 2929.19(B)(4), it may be appealed because such a sentence is 'contrary to law' and is also not 'authorized by law.'" *State v. Batty*, 2014-Ohio-2826, ¶ 22 (4th Dist.). Thus,

> when a trial court fails to provide proper notice of a specific term to the offender, "[t]he matter must be remanded to the trial court for a resentencing under that provision with a prison term not an option." . . . Although a prison term is not an option at the resentencing, the trial court may choose to impose a longer time under the same sanction or impose a more restrictive sanction.

*State v. Goldsberry*, 2009-Ohio-6026, ¶ 11 (3d Dist.), quoting *Brooks* at ¶ 33.

{¶ 22} Regarding the imposition of consecutive sentences, the Ohio Supreme Court has further clarified that

> [w]hen a court revokes community control, it may require that the reserved prison term be served consecutively to any other sentence then existing or then being imposed but only if at the time it imposed community control, it notified the offender that a consecutive sentence on revocation of community control was a possibility.

*State v. Jones*, 2022-Ohio-4485, ¶ 2. Accordingly, "a reserved prison term may be ordered to be served consecutively to any other sentence at a community-control-revocation hearing if notice was given when the prison term was reserved that the term could be required to be served consecutively to another prison term at the time of revocation." *Id.* at ¶ 15. "[I]n the absence of notice to an offender that a reserved prison term may be consecutive, a concurrent term should be presumed, in accordance with R.C. 2929.41(A)." *Id.* at ¶ 16.

{¶ 23} After careful consideration, we find the trial court's advisement to Miller during his original sentencing hearing satisfied the requirements set forth in

*Jones*. In this case, the trial court engaged Miller on the record and expressly advised him that if he violated his community control, he was "looking" at a total of "48 months" in prison. (Tr. 47.) Although the trial court did not use the term "consecutive," we find Miller was provided sufficient notice that the court could require the reserved prison terms of 12 months on the fifth-degree felony and 18 months on each fourth-degree felony to be served consecutively. *See State v. Thompson*, 2024-Ohio-3361 (4th Dist.). An aggregate 48-month prison term could only be reached by ordering each reserved prison term to run consecutively. Accordingly, the imposition of consecutive sentences is not clearly and convincingly contrary to law.[2]

{¶ 24} The first assignment of error is overruled.

## B. Due Process

{¶ 25} In the second assignment of error, Miller argues the trial court violated his right to due process because "he did not receive written notice of his violation, the evidence against him was not disclosed prior to the hearing, he did not have an adequate opportunity to present witnesses and documentary evidence, and his right to confront and cross-examine adverse witnesses was violated."

{¶ 26} "Because the revocation of probation entails a serious loss of liberty, a probationer must be accorded due process at the revocation hearing." *State v. Bailey*, 2016-Ohio-494, ¶ 9 (8th Dist.), citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781

---

[2] Miller does not raise any additional arguments related to the trial court's compliance with R.C. 2929.14(C)(4). *See* App.R. 16(A)(7). We, therefore, decline to consider this issue sua sponte. *See* App.R. 12(A)(2).

(1973); *State v. Miller*, 42 Ohio St.2d 102 (1975), syllabus.  A person subject to community control may be punished for a violation of conditions of community control, but only if certain due-process rights are observed.  *See* Crim.R. 32.3(A).  The minimal due process requirements are:

> (1) written notice of the claimed violations; (2) disclosure of evidence against him; (3) opportunity to be heard and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a "neutral and detached" hearing body; and (6) a written statement by the factfinder of the evidence relied upon and reasons for revocation.

*State v. Davis*, 2010-Ohio-5126, ¶ 26 (8th Dist.), citing *Miller* at 104.

{¶ 27} It is well settled that the "[f]ailure to timely object to a due process violation during a probation violation hearing waives error."  *Bailey* at ¶ 10, citing *State v. Simpkins*, 2006-Ohio-3496, ¶ 12 (8th Dist.), citing *State v. Henderson*, 62 Ohio App.3d 848, 853 (5th Dist. 1989).  In this case, Miller did not object or raise a due process objection at the time of the revocation hearing.  Accordingly, he has waived all but plain error.  *See State v. Dagley*, 2022-Ohio-2671, ¶ 12 (8th Dist.).

{¶ 28} "Crim.R. 52(B) provides that '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" *State v. English*, 2021-Ohio-850, ¶ 10 (8th Dist.).  "Appellate courts take notice of plain error 'with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), citing *State v. Long*, 53 Ohio St.2d 91 (1978).

{¶ 29} Miller does not raise a plain-error argument on appeal. Nevertheless, the record reflects that Miller was afforded a revocation hearing and appeared before the court with counsel. At the onset of the hearing, the trial court indicated that counsel was previously notified of the revocation hearing but required a continuance based his unavailability. (Tr. 66.) In addition, Miller was provided an opportunity to be heard about the circumstances surrounding the alleged violations, and defense counsel was able to cross-examine Det. Vargo about his role in the investigation into the alleged drug transaction. The trial court also made an adequate inquiry into the allegations and carefully questioned Det. Vargo and Miller before making any decision on revocation. (Tr. 74-76.) Under these circumstances, we find the record does not demonstrate plain error.

{¶ 30} The second assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., CONCURS;
EILEEN A. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION)

EILEEN A. GALLAGHER, J., CONCURRING:

{¶ 32} I concur with my colleagues but write separately to express my concern as to the handling of this matter.

{¶ 33} The violation hearing held on July 17, 2023 was ostensibly based upon information that the appellant had provided a narcotic, later determined to be fentanyl, to another inmate in the Cuyahoga County Jail.

{¶ 34} A Cuyahoga County Sheriff's Department Narcotic's Bureau detective testified that an inmate in the jail had overdosed and was transported to MetroHealth Medical Center. Upon the inmate's return to the jail, he was questioned as to the source of the narcotics that he had ingested and he reported that the appellant had provided it to him.

{¶ 35} The detective testified that he then reviewed a video recording of an interaction between appellant and this other inmate wherein a transaction was made between the two men and that he later discussed his observation with the other inmate who confirmed that what the detective described to him was the point where appellant provided narcotics to him.

{¶ 36} I am concerned that there is a video of a drug transaction between two inmates in an Ohio detention facility or institution, that one of those inmates was in possession of a deadly, controlled substance, that those actions were in violation of multiple sections of the Ohio Revised Code and that, if true, appellant could, and should, be charged with a criminal offense(s). That video was not offered as evidence nor reviewed by the court at the violation hearing but rather the contents were merely described to the court.

{¶ 37} We know not whether this recording has been retained by the Cuyahoga County Sheriff's Department.

{¶ 38} I find this to be troubling.